**FEDERAL PUBLIC DEFENDER
DISTRICT OF NEW JERSEY**

**RICHARD COUGHLIN**
FEDERAL PUBLIC DEFENDER

800-840 Cooper Street
Suite 350
Camden, New Jersey 08102

**CHESTER M. KELLER**
FIRST ASSISTANT

(856) 757-5341   Telephone
(856) 757-5273   Facsimile

January 11, 2021

Honorable Robert b. Kugler
Senior United States District Judge
Mitchell H. Cohen Federal Bldg.
& U.S. Courthouse
Fourth and Cooper Streets
Camden, NJ 08102

Re:   *United States v. David T. Potts*,
      **Crim. No. 16-133(RBK)
      Update on Mr. Potts Health and COVID-19
      Cases at FCI Fort Dix**

Dear Judge Kugler:

I write to update you on David Potts' medical status. Recently Mr. Potts tested positive for COVID-19. He has advised undersigned counsel over the weekend that he is suffering with serious symptoms. He wrote that it is difficult for him to breath at night and he is scheduled for a chest X-ray.[1] He also advised that he does not have an appetite, cannot smell or taste anything and has lost 30 pounds over the last week. He hasn't eaten since Tuesday.

Mr. Potts has been terrified of getting COVID-19 over these last 10 months. Sadly, his fears have been realized and he is suffering greatly. This is of no surprise as this Court is aware that Mr. Potts has a number of comorbidities to COVID-19 including morbid obesity, hypertension, hyperlipidemia, chronic obstructive sleep apnea and GERD (gastroesophageal reflux disease). Mr. Potts also has a history of upper respiratory failure and double pneumonia. Given Mr. Potts current medical status along with his prior medical history, he should be at a hospital where they can take the necessary steps to treat his conditions. Instead, he languishes at FCI Fort Dix subject to their incompetent care, treatment and handling of the spread of the virus.

When Mr. Potts filed his reconsideration compassionate release motion on December 14, 2020, there were 52 positive COVID-19 cases and 360 recovered cases at FCI Fort Dix. Today the BOP reports a staggering 789 positive cases inmate cases, and 23 staff cases.[2] There are 530

---

[1] Updated BOP medical records have been requested and will be provided to the court upon receipt.

[2] See, BOP, *COVID-19 Coronavirus* retrieved from: https://www.bop.gov/coronavirus/ (last accessed January 11, 2021).

_____

recovered inmates and 45 recovered staff. *Id*. Fort Dix has the highest number of positive cases in the country. Steps that the BOP took to curb the spread at BOP facilities have not only been unsuccessful, but they have been downright reckless. They transferred positive inmates from FCI Elkton which caused a second serious outbreak at FCI Fort Dix. The second one being far greater than the first.

Assuming Mr. Potts survives his current infection, reinfection remains a serious threat, especially in prisons and jails where the incidence of COVID-19 is very high.[3] According to the World Health Organization, "[t]here is currently no evidence that people who have recovered from COVID-19 and have antibodies are protected from a second infection."[4] And according to the CDC, "[t]he immune response, including duration of immunity, to SARSCoV-2 infection is not yet understood. Patients with MERS-CoV are unlikely to be re-infected shortly after they recover, but it is not yet known whether similar immune protection will be observed for patients with COVID-19."[5] This is particularly true for those who had only a mild version of the illness. In early testing, not all individuals infected with COVID-19 developed antibodies. In particular, mild cases of COVID-19 can resolve before significant and enduring levels of antibodies are found.[6] Indeed, there are a number of reported cases of individuals who have "recovered," tested negative, and later tested positive again.[7] At least one inmate at FCI Fort Dix has tested positive for COVID-19 for the second time. [8]

A number of courts, including in the District of New Jersey, have granted compassionate release even after the defendant tested positive for COVID-19, finding that the continued risk from the virus, among other factors, amounts to an extraordinary and compelling reason for a reduction in sentence. While there are dozens of recovered COVID positive inmates that have received compassionate release, the cases listed here include recent grants[9]:

- *United States v. Phillip Avion McGreggor,* No. 2:18-CR-244(JCM)(Nev. Dec. 14, 2020) Court stated the possibility of reinfection and the existence of multiple serious comorbidities warrant a finding of extraordinary and compelling reasons to grant the motion.

---

[3] *See* Declaration of Tara Vijayan, M.D., M.P.H., filed in *United States v. Cordova*, No. 18 CR 2453-BAS, Docket Entry #43, (S.D. Cal. Nov. 24, 2020), attached hereto as Exhibit A.
[4] *"Immunity passports" in the context of COVID-19*, WHO (Apr. 24, 2020), *available at* https://www.who.int/news-room/commentaries/detail/immunity-passports-in-the-context-of-covid-19.
[5] *Clinical Questions about COVID-19: Questions and Answers*, CDC, *available at* https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html.
[6] Robert D. Kirkcaldy et al., *COVID-19 and Postinfection Immunity*, JAMA (May 11, 2020), *available at* https://jamanetwork.com/journals/jama/fullarticle/2766097.
[7] *See, e.g.*, Sarah McCammon, *13 USS Roosevelt Sailors Test Positive for COVID-19, Again*, NPR (May 16, 2020) (reporting that 13 sailors who had apparently recovered from COVID-19 and received negative test results had tested positive for a second time), *available at* https://tinyurl.com/y7g7ee8u; Brittany Mejia, *A patient's return to hospital COVID-19 unit underscores uncertainty to come*, L.A. Times (May 13, 2020) (reporting that patient was hospitalized with COVID-19, discharged in early April, readmitted about two weeks later, and tested positive a second time), *available at* https://tinyurl.com/y7fpsf5y.
[8] NY Daily News, *Prisoners at risk of catching COVID-19 a second time behind bars asking to be released*, retrieved from: https://www.nydailynews.com/new-york/ny-covid-second-cases-among-prisoners-20210111-tedyjcpwznajzh3xa4hbgjiiqi-story.html.
[9] Court orders attached as Exhibit B.

- *United States v. Lavelle Moore*, 3:01-cr-137(AAT)(M.D. Tenn. Dec. 14, 2020) Compassionate release granted to a recovered 45 year old COVID-19 positive inmate suffering with obesity and prediabetes. Court stated "there is no scientific certainty whatsoever as to whether one can be reinfected and whether or not one's subsequent course of the disease will replicate an earlier course."

- *United States v. Emigdio Martinez-De La Torre's*, No. 3:17-CR-00588(SI)(N.D. Cal. Dec. 11, 2020) Inmate with obesity, diabetes, high blood pressure, high cholesterol and previous COVID infection, established extraordinary and compelling circumstances to warrant compassionate release.

- *United States v. Daryn Easton,* No. 1:18-cr-00022-RLW(E.D. Mich. Nov. 10, 2020) Inmate with Type 2 diabetes mellitus with diabetic peripheral neuropathy, Stage IIIB chronic kidney disease, hypertension, and hyperlipidemia, and other ailments granted compassionate release. Court stated that COVID-19 diagnosis effect on kidney is unknown. There is also a reduction in BOP medical care at a time most needed. "The fact that Easton has already contracted COVID-19 does not mean he is no longer at risk, but it does show the BOP cannot protect him from the virus." Citing a recent scientific paper funded by the National Institute of General Medical Sciences and the National Institutes of Health concurs that "[t]he degree of protective immunity conferred by infection with SARS-Co V-2 is currently unknown," and "conclude[ s] that it is possible for humans to become infected multiple times by SARS-Co V-2, but the generalizability of this finding is not known."

- *United States v. Terrence Smith*, No. 3:11-cr-00452(FLW)(D.N.J. Oct. 29, 2020) Recovered COVID-19 positive inmate granted release from FCI Allenwood with obesity and the possibility of reinfection and long term complications. Defendant served more than 80% of sentence and will serve remainder of sentence on home confinement.

There is no question that Mr. Potts would be safer at home than in the BOP. The rate of infection is far higher within the Bureau of Prisons than within the community at large and continues to spread at an alarming rate. Furthermore, given Mr. Potts symptoms and medical history, he should be at a hospital, getting proper medical treatment. The BOP should not wait until he is near death before getting him to a hospital. Sadly, that is what it looks like will happen.

For reasons stated in this letter and those that are argued in the motion for reconsideration, Mr. Potts respectfully requests that his sentence be immediately reduced to time served followed by five years of supervised release so that he can seek the appropriate medical treatment which should increase his chances of survival.

        Respectfully submitted,

        *s/ Lisa Evans Lewis*
        LISA EVANS LEWIS
        Assistant Federal Public Defender

Attachments

cc:    Sara Aliabadi, Assistant United States Attorney
       David T. Potts